GIBBS *v.* GUILD.

1. AUTOMOBILES—PEDESTRIANS—NIGHTTIME—INSTRUCTIONS.
  Trial court's charge to jury relative to rights of plaintiff pedestrian and duties of defendant motorist involved in nighttime accident while plaintiff was crossing street and which included quotations from pertinent statutes relative to speed, driving on right side of highway, and condition of brakes and horn. *held,* not error although not given as consecutively, clearly and concisely as desired by plaintiff (CL 1948, §§ 256.305, 256.311, 256.339, 256.340).

2. SAME—PEDESTRIANS.
  Sets of instructions relative to rights and duties of northbound pedestrian which were to be applied according to whether jury found she was on south or north side of center line when hit by westbound motorist *held,* proper under record presented.

3. SAME—PEDESTRIANS—INSTRUCTIONS—SUDDEN EMERGENCY.
  Instructions given relative to application of sudden emergency doctrine, limited so that if northbound pedestrian were found to have been on north side of street when hit by westbound motorist it would not operate in pedestrian's favor and if defendant were found to have been on south side of street when he hit plaintiff, the doctrine would not apply in his favor *held,* proper since the doctrine of sudden emergency is inapplicable if the emergency has been brought about by the party's own negligence.

---

REFERENCES FOR POINTS IN HEADNOTES
[3] 5 Am Jur, Automobiles §§ 171–177.
[3] "Emergency rules" as applied to automobile or motorcycle drivers. 6 ALR 680; 27 ALR 1197; 79 ALR 1277; 111 ALR 1019.
[5] 3 Am Jur, Appeal and Error § 823.

4. EVIDENCE—CROSS-EXAMINATION—TRANSCRIPT OF INTERVIEW IN HOSPITAL.

  It was not error to cross-examine plaintiff pedestrian as to whether or not she had made certain statements concerning accident in the presence of a stenographer while she was in hospital before the stenographer's transcript of the interview by an investigator, not signed by plaintiff, was admitted in its entirety.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

  Questions as to whether plaintiff pedestrian had given her attorney her correct name and whether or not she could have crossed the street elsewhere are not discussed, where not decisive of main issues involved in her action against motorist.

Appeal from Gratiot; Cash (Paul R.), J. Submitted January 10, 1952. (Docket No. 33, Calendar No. 45,318.) Decided April 7, 1952.

Action by Ethel Gibbs against Donald W. Guild and wife for injuries sustained when she was struck by defendants' automobile. Verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Fehling & Green,* for plaintiff.

*Ballard, Jennings, Bishop & Fraser* (*Everett R. Trebilcock* and *Kenneth B. Montigel,* of counsel), for defendants.

SHARPE, J. This is an action for damages for personal injuries received by plaintiff, a pedestrian, while crossing a street in the village of Ithaca, Michigan, when struck by an automobile owned and operated by defendant Donald W. Guild.

The accident occurred September 26, 1948, at about the hour of 10 p.m. On the above date, plaintiff operated a movie theater on the south side of Center street. This street is 64 feet wide from curb to curb and is the main business street of the village. The business block on Center street is between Main

street on the east and Pine River street on the west. About half way between Main and Pine River streets is an alleyway about 21 feet wide. At this alleyway there are 2 lanes, 4 feet wide, marked on the pavement for pedestrians to cross Center street. These lanes extend from the south curb to the north curb. The business block is about 500 feet in length.

Plaintiff claims that on the day in question at about 9:45 or 10 p.m., she left her theater, walked west on Center street to the alleyway and after looking both ways started north across the street in the west lane; that as she looked she saw no car coming towards her from the east; that while walking across the south half of the street she was looking to the west for cars coming from that direction; that when she got to within about 6 feet south of the center line of Center street she was struck by defendant's car traveling at a speed of 45 to 50 miles per hour. As a result of this accident, plaintiff suffered permanent injuries.

Defendant driver claims that at the time of the accident he was proceeding west on Center street on the north half of the highway at a speed of 20 to 25 miles per hour; that he saw plaintiff going north when she was approximately half way across the traveled part of the north half of the street, at which time his car was approximately 20 feet from her; that upon seeing plaintiff he applied his brakes, turned his car to the left in an attempt to avoid striking her; and that after the impact defendant's car continued in a southwesterly direction coming to stop on the south side of the pavement a few feet from the center line.

The cause came on for trial, was submitted to a jury who returned a verdict of no cause of action. Plaintiff appeals and urges that the court was in error in failing to set forth plaintiff's claims as to

various acts of negligence relied upon in a clear and concise order.

The trial court gave the following instructions relating to plaintiff's claims:

"3. It is Mrs. Gibbs', the plaintiff's, claim that on this day, the 26th day of September, 1948, that she came out of her motion picture theater; and that she came down to the corner to the west and started crossing the street to the north. That she looked both ways and proceeded across, and was hit by the defendants in this case, Donald W. Guild and his wife Mildred Guild. That Donald Guild was driving the car; and she claims that she was hit upon the south side of the street, which runs east and west, in the south lane of the street; and that she was acting with due care. And she claims the defendant, Mr. Guild, drove his car over on the south side, or on which would be the wrong side of the street, and hit her. Mrs. Gibbs claims that she is free from negligence; and that the defendant, Mr. Guild, is guilty of negligence which contributed to this accident.

"4. The plaintiff claims also that the defendant was negligent in that he was not able to stop his car within the assured clear distance ahead. That he drove on the wrong side of the road. He did not sound his horn, nor have good brakes. These are the negligence claims on the part of the plaintiff."

It also appears that the trial court charged the jury:

"14. Now there is another statute which we call the assured clear distance statute, and I will read the statute, the part that applies as far as necessary in this case:

" 'Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other condition then ex-

isting; and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."[1]

"In regard to that, if you find that Mr. Guild did not have his automobile under control, and drove it at such a rate of speed that he was not able to stop within the assured clear distance ahead and prevent this accident, then he would be guilty of negligence.

"15. A person operating an automobile must use that degree of care which a reasonable person of ordinary prudence would exercise under the same or similar conditions. He is bound to exercise care commensurate with the danger naturally incident to the use of such automobile. In some situations greater care is required than in others, depending upon all of the circumstances which then exist and are present. A driver is required to use such care as is commensurate with the circumstances and conditions, the frequency or infrequency of travel, the time of the day or night, the traffic on the highway, and all the surrounding circumstances and conditions attending the time and place of the accident.

"16. A driver is obliged to take notice of conditions before him, and if it is apparent that by reason of some particular mode of proceeding he is liable to work an injury, it is his duty to adopt some safer method, if by reasonable care and prudence he can do so. The driver of an automobile is bound to anticipate that he will meet other vehicles and pedestrians at any point in the street, and he must keep a proper lookout for them and keep his car under such control as will enable him to avoid a collision with any other person using due care and caution.

"17. There is another statute in this State, which reads as follows:

" 'Upon all highways of sufficient width except upon one-way streets the driver of a vehicle shall drive

---

[1] CL 1948, § 256.305, subd (a) (Stat Ann 1947 Cum Supp § 9.-1565).—REPORTER.

the same upon the right half of the highway and shall drive a slowly moving vehicle as closely as possible to the right-hand * * * curb of said highway, unless it is impracticable to travel on such side of the highway."[2]

"That bears, members of the jury, upon the fact that the plaintiff claims that Mr. Guild was driving upon the left-hand or his left-hand or wrong side of the highway.

"18. I will read to you a section pertaining to brakes and horn:

" 'Every motor vehicle * * * when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle,' et cetera.[3]

"The law relative to the use of the horn is:

" 'Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order capable of emitting sound audible under ordinary [normal?] conditions from a distance of not less than 200 feet.'[4]

"These are the statutes which I think apply in this case, if you see fit to accept their application. * * *

"26. There has something been said about speed, that Mr. Guild was exceeding the speed limit; and I charge you in that connection that this accident occurred upon a business street in Ithaca, where the speed limit is 25 miles per hour.[5] And if you find that this car was going faster than that, as a question of fact,—and it is a question of fact, because there is a plain dispute on that matter,—then that would be prima facie evidence of negligence, providing that the excessive speed was the proximate cause of the accident and the resulting injuries."

---

[2] CL 1948, § 256.311 (Stat Ann 1947 Cum Supp § 9.1571).—REPORTER.

[3] CL 1948, § 256.339 (Stat Ann 1947 Cum Supp § 9.1599).—REPORTER.

[4] CL 1948, § 256.340 (Stat Ann § 9.1600).—REPORTER.

[5] CL 1948, § 256.305, subd (b) (Stat Ann 1947 Cum Supp § 9.1565).—REPORTER.

While the charge given did not consecutively out-line the rights of plaintiff and duties of defendant driver, we do not find any error in the above charge as given. There is no rule requiring a trial court to give a charge in the manner requested by plaintiff.

Plaintiff also urges that the trial court failed to call the jury's attention to the various duties that the plaintiff owed if she was on the north or south side of the street at the time of the accident.

The trial court gave the following instructions to the jury in the event they found the accident occurred on the north side of the street:

"20. That although a pedestrian upon a highway has a right to assume in the first instance that a driver of an automobile will use ordinary care and caution for the protection of pedestrians; neverthe-less, the pedestrian must not rest content on such presumption, if there comes a time when he or she knows or ought to know by the exercise of reasonable care that she is being placed in danger. A pedestrian must take such care for her own safety as a reason-able, careful, prudent person would do under similar circumstances. And, members of the jury, that is the degree of care that Mrs. Gibbs is held to when she crosses the street.

"21. I will say further, that under present day traffic conditions the plaintiff, Mrs. Gibbs, as a pe-destrian has certain well-established duties which she had to perform in order to meet the obligation of looking out for her own safety in crossing the street. Mrs. Gibbs, the plaintiff, before crossing the street must, first, make proper observation as to ap-proaching traffic; second, she should observe ap-proaching traffic and form a reasonably accurate judgment as to the distance such traffic was away from her, and the speed at which it approached her; and, third, she should continue her observations of such traffic while crossing the street or highway; and, lastly, she should exercise that degree of care and

caution which an ordinarily careful and prudent person would exercise under like circumstances.

"22. Members of the jury, if you find from the evidence that the plaintiff, Mrs. Gibbs, failed to make a proper observation to the east for the defendant, Mr. Guild's approaching car, before crossing the street; or, if you find that she failed to make a reasonably accurate judgment of the speed of Mr. Guild's car approaching, or its distance away from her; or if you find that Mrs. Gibbs failed to continue to make reasonable observation as to the defendant's automobile approaching from the east while crossing the street or highway; and that these failures or acts of neglect on the part of the plaintiff, Mrs. Gibbs, contributed to the occurrence of this accident, then your verdict should be for the defendants, since the plaintiff, Mrs. Gibbs, by failing to observe such duties would be guilty of contributory negligence."

Plaintiff finds no fault with the above charges if confined to the duty of plaintiff if and when she was on the north side of the street. The record does not support plaintiff's claim of error. The trial court in charge No. 19 made it clear that charges Nos. 20, 21 and 22 were only to be considered if they found that the accident occurred on the north side of the street. Instruction No. 20 was taken from the law set forth in *Pearce* v. *Rodell,* 283 Mich 19. Instructions Nos. 21 and 22 were taken from the law set forth in *Malone* v. *Vining,* 313 Mich 315.

The trial court gave the following instructions to the jury in the event they found the accident occurred on the south side of the street:

"24. I charge you that it is the law of the road that one who violates the law and drives on the wrong side of the road assumes the risk of such an experiment and is required to use greater care than if he had kept on his right side of the road. The plaintiff, Mrs. Gibbs, was not called upon to anticipate

that the defendant would violate the statute, either as to speed, or driving on the wrong side of the road. The duty of Mrs. Gibbs to avoid the danger of injury did not arise until it became apparent, or the circumstances were such that an ordinarily prudent person would have apprehended its existence. In other words, Mrs. Gibbs has at all times to exercise such care and prudence as an ordinarily prudent person would. But the general rule is that every person has a right to presume that every other person will perform his duty and obey the law; and, in the absence of reasonable ground to think otherwise, it is not negligence to assume that she is not exposed to danger which can come to her only from violation of the law or duty to such other person. This charge will apply if you find that Mrs. Gibbs was hit upon the south lane of the street.

"25. I further instruct you that to some extent at least Mrs. Gibbs has a right to rely upon the known fact that usually an automobile traveling west does not travel on her side of the street. She naturally would not expect to meet an automobile where the law of the road does not permit them to travel. You will recall that Mrs. Gibbs testified that she looked to the right, and to the left, east and west, and saw nothing. And if she looked to her right she would have a right to rely on the assumption that the defendant would also be looking and would steer his car to his own side of the street and avoid hitting her. In other words, a person that is on his own side of the street has the right to assume that the other car coming toward him will obey the law and pass him on his right-hand side of the street. That applies if Mrs. Gibbs was hit upon the south side of the street."

Plaintiff urges that the court was in error in its charge to the jury that the emergency doctrine does not apply if either party is on the "wrong side" of the street. On this subject, the trial court instructed the jury:

"29. The law makes allowances for acts done in an emergency and in sudden peril, and for lack of coolness of judgment incidental thereto. Thus, if you find from the facts that an emergency or a situation of sudden peril existed which required immediate action by Mr. Guild, his efforts to avoid an accident should be judged in the light of those facts and not by what might appear he should have done had he had the opportunity for mature reflection and deliberation. That applies, members of the jury, in this way; that the claim has been made that Mrs. Gibbs walked into the path of Mr. Guild's car and thereby created an emergency, and that Mr. Guild would not be held to the same strict rules of negligence by reason of that fact. And that applies if she walked into the car on the north side of the road.

"30. The plaintiff in this case, Mrs. Gibbs, claims a sudden emergency; and, where Mrs. Gibbs is required to act suddenly in the face of imminent danger, the law does not require her to exercise the same care as if she had acted deliberately and in full exercise of judgment; and that is true where the peril has been caused by the act of another. If the plaintiff, Mrs. Gibbs, was suddenly confronted with an emergency, as I have outlined it to you, particularly if caused by the defendant, Mr. Guild; the plaintiff, Mrs. Gibbs, will not be held negligent merely because she failed to exercise the care a prudent person would have exercised under the same circumstances because she failed to exercise the best judgment or take every precaution which, after a careful review of the circumstances after the accident, it appears she might have taken and might have avoided the accident. If Mrs. Gibbs in good faith acted as a person of ordinary prudence might have acted under the circumstances, she will not be guilty of contributory negligence."

At the close of the instructions, the following occured:

"56. *The Court:* Members of the jury, my attention has been called to a certain fact here, and I think

I better pass it on to you, that the emergency doctrine which I have described to you does not apply if either party is on their wrong side of the road.

"*Mr. Trebilcock:* May I speak, your Honor?

"*The Court:* Sure.

"*Mr. Trebilcock:* I think, more accurately stated, it would be that Mrs. Gibbs if on the north side of the road could not claim the benefit of it for herself.

"*The Court:* That is right.

"*Mr. Trebilcock:* If she is on the south side of the road she could claim the benefit of that doctrine. If the defendant is on the south side he cannot claim the benefit of the doctrine for himself, but he can so claim if the jury should find him on the north side of the road.

"*The Court:* All right, I will adopt that statement of counsel and that will be part of the charge."

It is the rule that the doctrine of sudden emergency is not applicable if the emergency has been brought about by the party's own negligence, see *Vaas* v. *Schrotenboer,* 329 Mich 642. Under the factual situation in this case no error was committed in the above instruction.

Plaintiff also urges that it was error to permit defendants to cross-examine plaintiff as to her recollection of having made certain statements before a stenographer while she was in a hospital, before the admission of the transcript in its entirety. It appears that a court reporter at the request of defendants was present while plaintiff was in a hospital and recorded the questions asked plaintiff by an investigator and the answers given by her. It does not appear that the transcript of this testimony was signed by plaintiff, but it was received in evidence. It also appears that plaintiff was asked if, while in the hospital, she did not make certain statements concerning the accident in the presence of a stenographer. In our opinion this question was not objectionable.

In *Zibbell* v. *City of Grand Rapids,* 129 Mich. 659, we said:

"The plaintiff appeared before a committee of the common council, and stated the circumstances of her injury, and her statement was taken down by a stenographer. On her cross-examination on the trial of the present case defendant's counsel asked her as to certain statements alleged to have been made by her on the occasion referred to. The court ruled that these questions were improper, unless the entire transcript from the stenographer's minutes was introduced. This ruling was error. *Seligman* v. *Ten Eyck's Estate,* 53 Mich. 285, 289; *Toohey* v. *Plummer,* 69 Mich. 345."

Other questions have been raised, such as whether plaintiff informed her attorney that her correct name is Mrs. Kane and whether or not plaintiff could have crossed to the opposite side of the street by going to the intersection rather than using the cross-walk. They are not in any way decisive of the main issues involved in this case and do not require further discussion.

We find no reversible error and the judgment is affirmed, with costs to defendants.

North, C. J., and Dethmers, Butzel, Carr, Bushnell, Boyles, and Reid, JJ., concurred.